[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-12074
Non-Argument Calendar

_____

Agency No. A098-942-358

PARULBHAI KANTILAL PATEL,
DARSHANABAHEN PATEL,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(March 13, 2014)

Before HULL, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Mr. Parulbhai and Mrs. Darshanabahen Patel (collectively "the Patels"),

natives and citizens of India, petition for review of the Board of Immigration

Appeals's ("BIA") order affirming the Immigration Judge's ("IJ") denial of Mr.

Patel's application for asylum, withholding of removal, and relief under the United

Nations Convention Against Torture ("CAT").[1]  After careful review, we dismiss

in part and deny in part the Patels' petition.

## I.  BACKGROUND

### A.     The Patels' 2006 Illegal Entries and Notices to Appear

The record evidence shows that Mr. Patel's brother paid a smuggler, Ali, to

arrange for the Patels to leave India, fly to Cuba, and enter the United States by

boat.  Mr. Patel does not know if Ali is the smuggler's first or last name.

Ali provided the Patels with passports and Cuban visas, which Mr. Patel

believed that Ali could obtain only if Ali had a connection to the Indian

government.  Mr. Patel, however, did not know whether Ali actually had a

government connection.[2]  Indeed, Mr. Patel did not "know much" about Ali's

background or occupation, aside from the fact that he was a smuggler and a

"powerful person."  Before the Patels left India, Ali warned Mr. Patel not to speak

---

[1]Mr. Patel's asylum application sought derivative relief for his wife, Mrs. Patel.  The statutes and regulations governing withholding of removal and CAT relief do not create derivative rights.  See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007) (holding that the withholding-of-removal statute does not create derivative rights); 8 C.F.R. § 208.16(c) (discussing eligibility of applicant for CAT relief, but not derivative beneficiaries).  Thus, Mrs. Patel is not entitled to withholding of removal and CAT relief.

[2]Mr. Patel's asylum application and written statement provided that Ali had a "high level" or "upper level" position with the Indian government, but Mr. Patel later admitted at the merits hearing that he did not know Ali's background or occupation.  At the merits hearing, Mrs. Patel also indicated that she lacked actual knowledge as to whether Ali had "a connection with the government."

about the smuggling operation or Mr. Patel would face "harsh consequences" if he returned to India.

In May 2006, the Patels left India and arrived in Cuba. At the Cuban airport, an unknown person of Indian nationality picked up the Patels and transported them to a hotel in Cuba. This person instructed the Patels not to "name names" or the Patels or their families would be hurt.

On June 9, 2006, while still in Cuba, the Patels, along with four other Indian nationals, boarded a boat driven by Steven Kivett, whom Ali had hired. The U.S. Coast Guard stopped the boat before it reached the United States and took the Patels to a U.S. detention facility.

On July 25, 2006, the U.S. Department of Justice issued Notices to Appear ("NTA") charging the Patels as removable, pursuant to Immigration and Nationality Act ("INA") § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), for being present in the United States without being admitted or paroled.[3] At a March 2007 hearing, the Patels conceded removability.

**B.    Mr. Patel's October 2006 Testimony Against the Smuggling Operation**

In the meantime, Mr. Patel testified against Kivett during Kivett's October 2006 criminal trial involving the smuggling of the Patels into the United States.

---

[3]The NTAs also charged the Patels as removable, pursuant to INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I), for not possessing valid entry documents. However, the IJ dismissed these charges.

Kivett was convicted of a smuggling offense and sentenced to two years' imprisonment.

Following his conviction, Kivett became concerned about the Patels' safety and, thus, alerted his attorney that he believed the Patels would be killed if they returned to India. According to Kivett, the Indian smugglers had informed Kivett that they had told the Patels that, if they testified about the smuggling operation, they would be killed upon their return to India. Kivett later filed an affidavit in which he attested that he had heard "rumors" that Ali "was in a high position in the [Indian] government."

## C.    Mr. Patel's March 2007 Application for Asylum, Withholding of Removal, and CAT Relief

In March 2007, Mr. Patel filed an application for asylum, withholding of removal, and CAT relief. Mr. Patel expressed his fear that, if he returned to India, Ali would harm him because Mr. Patel testified against Kivett and mentioned Ali during the trial.

In September 2009, the IJ held a merits hearing regarding Mr. Patel's application, at which the Patels testified. Mr. Patel testified that Ali telephoned him ten days prior to the hearing and warned Mr. Patel not to speak to anyone about "anything" or Mr. Patel would be killed if he returned to India. Mr. Patel further testified that, despite Ali's threats against him, Mr. Patel's brother and other family members who remained in India were unharmed.

4

**D.    IJ's June 4, 2012 Decision[4]**

On June 4, 2012, the IJ found that the Patels were credible and that Mr. Patel was threatened by individuals connected to the smuggling operation. The IJ determined, however, that Mr. Patel did not show past persecution or that he had a well-founded fear of future persecution <u>on account of</u> his political opinion or membership in a particular social group if removed to India. The IJ explained that: (1) the threats to Mr. Patel were made "so that this ongoing smuggling ring would not be interrupted"; (2) the threats involved a "personal dispute" and were not based on Mr. Patel's political opinion or membership in a particular social group; and (3) "fear of retribution over personal matters is not a basis for asylum." Thus, the IJ determined that Mr. Patel was ineligible for asylum and withholding of removal.

The IJ also determined that, although the Patels assumed that Ali was associated with the Indian government, no evidence showed that the Indian government was involved in the smuggling operation. The IJ found that Mr. Patel had not shown that he was entitled to CAT relief because he had not shown that he would be tortured by, or with the acquiescence of, a public official if removed to India.

**E.    The Patels' June 2012 BIA Appeal**

---

[4]It is unclear from the record why there was an almost three-year gap between the September 2009 merits hearing and the IJ's June 2012 decision.

In June 2012, the Patels filed a notice of appeal, which asserted that the IJ erred in finding Mr. Patel ineligible for (1) asylum and withholding of removal because the evidence showed that he objectively feared political persecution if removed to India; and (2) CAT relief because the evidence showed that it was more likely than not that he would be tortured if removed to India.

In their supporting brief, the Patels argued generally that the IJ erred in finding that Mr. Patel failed to show past persecution or a well-founded fear of future persecution on account of one of the enumerated grounds.  However, the Patels did not articulate or argue a specific ground that would support Mr. Patel's asylum and withholding of removal claims.  The Patels further argued that their evidence showed that: (1) the smuggling organization would kill Mr. Patel for testifying against Kivett if Mr. Patel returned to India; and (2) the smuggling organization had ties to India's government.  The Patels argued that Mr. Patel was eligible for asylum, withholding of removal, and CAT relief.

## F.    BIA's April 12, 2013 Decision

On April 12, 2013, the BIA concluded that the Patels did not establish that they suffered past persecution.[5]  Further, the BIA determined that, even if they had established a well-founded fear of future persecution, such persecution would not

---

[5]The BIA, unlike the IJ, reviewed whether both of the Patels had shown their eligibility for asylum, withholding of removal, and CAT relief, rather than recognizing that Mrs. Patel sought only derivative relief through Mr. Patel.  However, this has no impact on our decision.

6

be on account of one of the five grounds set forth in the INA because acts of private violence or evidence that aliens may be the victims of criminal activity do not constitute evidence of persecution based on a statutorily protected ground. The BIA also observed that the Patels' family, including Mr. Patel's brother (who had contracted with Ali and the smugglers), remained in India unharmed, which undermined the Patels' fear of future persecution. According to the BIA, the Patels failed to show that Ali or the smuggling operation acted with the consent of any public official and that they would be subjected to state-sponsored torture. The BIA affirmed the IJ's determination that the Patels were ineligible for asylum, withholding of removal, and CAT relief.

On May 8, 2013, the Patels filed a petition for review in this Court.

## II.  DISCUSSION

### A.    Standard of Review

We review our subject matter jurisdiction de novo. Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006). We review the BIA's factual findings to determine whether they are supported by substantial evidence. Adefemi v. Ashcroft, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc). "Under the substantial evidence test, we view the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Id. at 1027. We may reverse the BIA's factual findings only when

7

the record so compels.  Id.  Here, we review both the IJ's and the BIA's decision because the BIA agreed with the IJ's findings.  Wu v. U.S. Att'y Gen., 712 F.3d 486, 492 (11th Cir. 2013).

## B.    Exhaustion of Claim of Membership in a Particular Social Group

We may review a final order of removal only if the petitioner has exhausted all administrative remedies available to him as a matter of right.  INA § 242(d)(1), 8 U.S.C. § 1252(d)(1).  The exhaustion requirement is jurisdictional and precludes review of a claim that was not presented to the BIA.  Amaya-Artunduaga, 463 F.3d at 1250.

To properly raise a claim before the BIA, the petitioner must mention the issue and discuss its merits, or at least contest the basis for the IJ's decision.  See Alim v. Gonzales, 446 F.3d 1239, 1253 (11th Cir. 2006) (concluding that the petitioner failed to exhaust his cancellation-of-removal claim because, in his appeal to the BIA, the petitioner "never discussed the merits of his application for cancellation of removal, let alone the IJ's basis for denying it"); see also Cendejas Rodriguez v. U.S. Att'y Gen., 735 F.3d 1302, 1310 n.10 (11th Cir. 2013) (concluding that the petitioner's claim that he was persecuted based on his imputed membership in a particular social group was not raised before the BIA and, thus, was not exhausted).

We lack jurisdiction to review the Patels' claim that they were members of a particular social group (defined as "the shared past experience of witnessing an Indian smuggling ring and testifying against its members"). As the government's appellate brief points out, the Patels did not raise this claim before the BIA, either in their notice of appeal to the BIA or in their supporting brief. This claim is not exhausted.[6] We, therefore, dismiss the Patels' petition as to this claim.

## C.    Mr. Patel's Eligibility for Asylum and Withholding of Removal

To establish asylum eligibility, an alien must show, with specific and credible evidence, either past persecution or a "well-founded fear" of future persecution on account of one of the five statutorily listed grounds, which include an alien's membership in a particular social group. INA §§ 101(a)(42), 208(a)(1) and (b)(1), 8 U.S.C. §§ 1101(a)(42), 1158(a)(1) and (b)(1); see Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005). Similarly, an applicant for withholding of removal must show that it is more likely than not that he will be persecuted on account of a protected ground. INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); see Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003).

---

[6]We note that the BIA specifically recognized that "[t]he sole argument put forth by [the Patels] is their fear of future harm from Mr. Ali." The BIA did not specifically address whether the Patels were members of a particular social group.

9

We conclude that substantial evidence supports the BIA's conclusion that the Patels did not show "that any potential harm would be inflicted <u>on account of</u> one of the five grounds" enumerated in the INA.  This Court has stated that "'[e]vidence that either is consistent with acts of private violence or the petitioner's failure to cooperate with guerillas, or that merely shows that a person has been the victim of criminal activity, does not constitute evidence of persecution <u>based on</u> a statutorily protected ground.'"  <u>Cendejas Rodriguez</u>, 735 F.3d at 1310 (emphasis added) (addressing petitioner's application for withholding of removal).   Here, the evidence did not show that Mr. Patel would be targeted or singled out for persecution because of his status as a testifying witness to a crime.  <u>See</u> <u>id.</u> (providing that an applicant must present evidence showing that he will be "'<u>singled out</u> for persecution on account of [a protected ground]'").  More likely, any future persecution of Mr. Patel is because he threatened the personal interests of those involved in the smuggling operation.  <u>See</u> <u>id.</u> at 1310-11 (concluding that, even if the petitioner was a member of a cognizable social group, the IJ and BIA correctly determined that the petitioner failed to show that the harm he feared from a drug-trafficking organization arose from his membership in such a group, but rather only showed that his family was harmed due to their failure to cooperate

with the drug traffickers or were the victims of criminal activity).[7]  We therefore

deny the Patels' petition in this respect.

### D.    Mr. Patel's Eligibility for CAT Relief

To establish eligibility for CAT relief, an applicant must demonstrate that it

is more likely than not that he would be tortured by, or with the acquiescence of,

the government, if he is removed to the designated country of removal.  See 8

C.F.R. §§ 208.16(c)(2), 208.18(a)(1).

We conclude that substantial evidence supports the BIA's and IJ's

conclusion that Mr. Patel did not establish that Ali had any connection to the

government of India.  Mr. Patel's evidence as to any government connection was

purely speculative and not based on any specific knowledge.  Since Mr. Patel has

failed to show a nexus between the smuggling organization and the Indian

---

[7]Because the Patels have not shown that any persecution of Mr. Patel would be on account of a protected ground, they cannot show that Mr. Patel is eligible for asylum or withholding of removal.  See Sepulveda, 401 F.3d at 1230-31; Mendoza, 327 F.3d at 1287. Accordingly, we need not address the Patels' remaining argument, which is that the BIA erred in concluding that evidence that Mr. Patel's brother remained in India unharmed undermined Mr. Patel's claims of future persecution.

In any event, we conclude this remaining argument lacks merit.  The evidence shows that the Patels and their families were threatened.  Despite this threat, Mr. Patel's brother and other family were living in India unharmed at the time of the merits hearing.  See Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1258-59 (11th Cir. 2006) (providing that the petitioner's claim that he feared future persecution was "contradicted" by the ability of his family to live unharmed in the area in which he purportedly faced the threat of violence).

government, he failed to demonstrate that he would likely be tortured by or with the consent of a government official.[8]  We thus deny the petition as to this issue.

For the foregoing reasons, we dismiss in part and deny in part the Patels' petition.

**PETITION DISMISSED IN PART, DENIED IN PART.**

---

[8]Additionally, we lack jurisdiction to consider the Patels' claim—concerning the IJ's failure to give them notice of the need to supply additional evidence of Ali's government connections—because that claim was not exhausted.